**FILED**

**DEC 1 2 2017**

Clerk, U.S. District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| MICHAEL S. ALLARD,<br><br>Petitioner,<br><br>vs.<br><br>STATE OF MONTANA,<br><br>Respondents. | Cause No. CV 16-63-M-DLC-JCL<br><br><br>FINDINGS AND<br>RECOMMENDATIONS OF UNITED<br>STATES MAGISTRATE JUDGE |

This case comes before the Court on Petitioner Michael S. Allard's application for writ of habeas corpus under 28 U.S.C. § 2254.

## I. Factual and Procedural Background

**A.     Underlying State Conviction**

Allard was originally charged in Montana's Fourth Judicial District Court, Missoula County, with Sexual Intercourse without Consent, Sexual Assault, and Endangering the Welfare of Children (2nd offense).  (Doc. 38-3 at 2, Doc. Seq. 7); *see also,* (Doc. 19 at 9-10).  Pursuant to a plea agreement, Allard pleaded guilty to one count of Sexual Assault.  (Doc. 19 at 33-34).  On December 2, 2010, Allard was sentenced to forty years at the Montana State Prison with 10 of the years suspended and was given a nine year parole restriction.  *Id.* at 101-02.  Judgment was entered on December 13, 2010. (Doc. 19 at 105); see also (Doc. 38-3 at 12, Doc. Seq. 59).

1

Following sentencing, in February of 2011, Allard sent a letter to the trial court judge, Honorable John W. Larson, requesting the full court file and transcripts of all proceedings.  Judge Larson responded by advising Allard that his attorney should have copies of all the pleadings and that because no notice of appeal had been filed, transcripts were not yet prepared.  (Doc. 19 at 118).  Allard was advised to contact his attorney of record or the Office of the Appellate Defender for assistance.  *Id.*

**B.     Allard's Direct Appeal**

The Office of the State Appellate Defender filed a timely appeal on Allard's behalf.  Attorney Colin Stephens, who was contracted through the Appellate Defender's Office, was appointed to represent Allard on appeal.  The sole issue raised on appeal was whether or not the trial court erred by including a "to be determined" restitution amount in the written judgment.  *State v. Allard*, No. DA 11-0077, App. Br. at 1 (May 19, 2011).  The State of Montana ultimately conceded that the inclusion of restitution in the judgment appeared to be an oversight and recommended the provision be stricken.[1]  *State v. Allard*, No. DA 11-0077, Concession (filed June 16, 2011).  The Montana Supreme Court remanded the

---

[1] The State noted that during a November 17, 2010, hearing, the prosecutor advised the trial court the victims would not be making a claim for restitution.  The Pre-Sentence Investigation also stated that no request for restitution had been made.  *Allard*, DA 11-0077, Concession at 1-2.

matter and ordered the trial court to enter an Amended Judgment striking the

restitution condition. *State v. Allard*, No. DA 11-0077, Or. (Mont. June 28, 2011).

In accordance with the Montana Supreme Court's directive, the trial court entered

an Amended Judgment on August 14, 2011. (Doc. 38-3 at 13, Doc. Seq. 67).

Apparently Allard was never provided a copy of the amended judgment at that

time, although notice was sent electronically to the Appellate Defender's Office.[2]

*Id.*

## C.   Interim Events

Nearly two and one-half years after the entry of the Amended Judgment, in

April of 2014, Allard sent a letter to his appellate attorney, Colin Stephens,

inquiring into the status of his appeal and resentencing. (Doc. 19 at 120-21).

Allard stated that there "had been no movement" in his case since the state's

concession on appeal.  Allard advised Stephens he had attempted to contact the

Office of the State Public Defender, the Appellate Defender's Office, the Missoula

County Defender's Office, and the Lake County Defender's Office, and had not

been able to obtain a response to his inquiries into the case status. *Id.* at 120.[3]

---

[2] It appears that the Amended Judgment was sent again to the Appellate Defender's Office on August 15, 2011. (Doc. 38-3 at 13, Doc. Seq. 67); it was sent again on August 15, 2014. (Doc. 38-3 at 13, Doc. Seq. 69);  It also appears that on December 8, 2014, Allard's representative, LaVonne Olmsted, obtained copies of the trial court judgments. (Doc. 38-3 at 13-14, Doc. Seq. 69) *See also*, (Doc. 19 at 121)(letter from Allard to Stephens wherein Allard advises that Mrs. LaVonne Olmsted is his "legal power of attorney."); *and*, (Doc. 7 at 2)(Allard represents to this Court that he recently received documents from his "Power of Attorney, LaVonne Olmsted.).

[3] Allard apparently did not contact the trial court or Missoula County Clerk of District Court.

Allard expressed to Stephens his belief that the plea agreement he signed was binding, that a conflict of interest existed between the Missoula County Office of the Public Defender and the Lake County Office of the Public Defender, that his mental functioning was impaired at the time of the change of plea hearing, that he was not receiving his thought process medications at the time of the change of plea hearing, and that Judge Larson made various errors which amounted to bias. *Id.* at 120-121. Allard believed that all of these factors, taken together, should constitute grounds to renegotiate a plea agreement of twenty years with fifteen of those years suspended. *Id.* at 120.[4] Allard also stated that he had none of his legal documents as they had not been sent with him following his transfer from CCA to the Montana State Prison. *Id.* at 121. Allard sought Stephens' assistance in pursuing these matters.

On July 30, 2014, Stephens replied and advised Allard he was unable to provide the requested assistance. Stephens acknowledged that he had no idea what had happened to Allard's case following the appeal and remand, but he assumed the entire case file had been transferred back to Allard's trial attorney, Noel Larrivee. *Id.* at 122. Stephens sent Allard a copy of the Montana Supreme Court's decision on direct appeal and explained that the case had been remanded with a

---

[4] Allard did not advise Stephens that he was unhappy with Stephens' performance on direct appeal or that Stephens failed to raise issues that Allard believed to be meritorious.

directive to strike the restitution provision. *Id.*

**D.      Allard's Petition for Out of Time Appeal**

In September of 2014, Allard filed a petition for an out of time appeal with

the Montana Supreme Court. *See, State v. Allard*, No. DA 14-0606, Pet. (filed

Sept. 22, 2014. The Court summarized Allard's issues on appeal as follows:

> Allard now argues that he discussed timely appealing four other issues
> with his attorney. He attaches a copy of the opening brief filed in his
> 2011 appeal, acknowledging that it addressed only a restitution issue,
> but now raises issues about his arrest, *Miranda* rights, his trial
> counsel's ineffective assistance, the plea agreement and the
> sentencing court's judgment. He contends that he discussed his
> concerns with his appellate attorney who said, "he would get my case
> before a different District Judge to present my medical/mental health
> issues, get me a trial or renegotiate a new plea agreement, none of
> which were done."

*State v. Allard*, No. DA 14-0606, Or. at 1-2 (filed Oct. 7, 2014).[5] The Court found

that Allard failed to present "extraordinary circumstances amounting to a gross

miscarriage of justice" under M.R. App. R. 4(6) which would allow for an

untimely appeal. *Id.* at 2. Accordingly, Allard's petition was denied.

**F.      Subsequent Contact with Trial Court**

Although it is unclear exactly when, at some point in 2015, Allard contacted

the trial court and renewed his request for a copy of his entire case file.[6] On

---

[5] *Available at* supremecourtdocket.mt.gov (accessed November 21, 2017).
[6] The trial court docket reflects a letter was received from the Montana Department of
Corrections on August 26, 2015, but it is unclear whether this was Allard's request for his file.
See, (Doc. 38-3 at 14)(Doc. Seq. 70).

November 17, 2015, Judge Larson denied the request. Attached to the trial court's order was a copy of the Montana Supreme Court's Order remanding the case and the August 8, 2011, Amended Judgment. See, (Doc. 31-16).

## G. Allard's Federal Habeas Petition

Allard filed his petition in this Court on April 14, 2016.[7] Concerned about the procedural obstacles faced by Allard and his claim of a brain injury, the Court appointed counsel. An Amended Petition was filed on Allard's behalf. (Doc. 18). Respondents filed a Motion to Dismiss arguing: 1) the Petition is barred by the statute of limitations and Allard is not entitled to equitable tolling of the limitations period, and 2) that his claims are procedurally defaulted. (Doc. 30). Allard filed a response in opposition to the motion to dismiss. (Doc. 35). On May 19, 2017, Respondents filed their reply. (Doc. 38).

The statute of limitations is a threshold issue that must be resolved before the merits of individual claims. *White v. Klitzkie*, 281 F. 3d 920, 921-22 (9th Cir. 2002). For the reasons discussed herein, it is recommended that Respondent's Motion be granted and the petition be dismissed with prejudice as untimely.

## II. Analysis

Because Allard's petition was filed after the Antiterrorism and Effective

---

[7] Under the prison mailbox rule, the Court uses the day on which a petitioner signed and delivered the petition to prison authorities for mailing as the filing date. See, *Houston v. Lack*, 487 U.S. 266, 275-76 (1988).

Death Penalty Act of 1996 ("AEDPA") became law, it is subject to the one-year

statute of limitations set forth at 28 U.S.C. §2244(d)(1).  Allard's conviction

became final 60 days after the entry of the amended judgment following remand,

on Thursday, October 13, 2011.[8]  Mont. R. App. P. 4(5)(b)(i)(2008); *Caspari v.*

*Bohlen*, 510 U.S. 383, 390 (1994); *Burton v. Stewart*, 549 U.S. 147, 156-57 (2007).

Pursuant to section 2244(d)(1)(A), the one-year statute of limitations began to run

the next day, on October 14, 2011, and expired one year later, on Monday, October

15, 2012.[9]  Allard filed his initial petition in this Court on April 14, 2016.  Absent a

different start date or tolling of the limitations period, the deadline for Allard's

filing was October 15, 2012.

## A. Delayed Accrual of Limitations Period

AEDPA provides that the one-year limitations period can run from "the date

on which the impediment to filing an application created by State action in

violation of the Constitution or laws of the United States is removed, if the

applicant was prevented from filing by such State action."  28 U.S.C.

---

[8] In an earlier order, this Court noted that Allard's conviction became final on Friday, October 7, 2011.  See, (Doc. 5 at 4).  Although the Amended Judgment was signed on August 8, 2011, according to the trial court docket, it was not actually entered until August 14, 2011.  Accordingly, Allard will receive the benefit of the six extra days.

[9] One year from October 14, 2011, is actually Sunday, October 14, 2012.  But see Fed. R. Civ. P. 6(a)(1)(C)("[I]n computing any time period specified…in any statute…include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."); see also, *Patterson v. Stewart*, 251 F. 3d 1243, 1246 (9th Cir. 2001).

§2244(d)(1)(B).  Petitioners invoking this provision must satisfy a "higher bar than that for equitable tolling." *Ramirez v. Yates*, 571 F. 3d 993, 1000 (9th Cir. 2009). Delayed accrual is warranted under §2244(d)(1)(B) only if the state impediment prevented the petitioner "from presenting his claims in any form, to any court." *Id.* at 1001; see also *Shannon v. Newland*, 410 F. 3d 1083, 1088 (9th Cir. 2005)(section 2244(d)(1)(B) applicable "when a petitioner has been impeded from *filing* a habeas petition.").

Allard argues that he was not served with the Amended Judgment as required by Montana law.  This oversight, so the argument goes, lulled Allard into thinking that the trial court had not yet acted upon the remand directive from the Montana Supreme Court.  It was not until Judge Larson provided Allard with a copy of the Amended Judgment in November of 2015 that, according to Allard, the "state created impediment" was removed.  Thus, Allard asserts his one year limitations period began to run on November 17, 2015, and, accordingly, his habeas petition is timely.

As the State points out, Allard cannot avail himself of this provision because he has not established that the state engaged in an illegal action.  Allard cites to a provision of the Montana Code that deals with the entry of written judgment following the oral pronouncement of sentence.  See, (Doc. 35 at 5; *citing* Mont. Code Ann. §46-18-116(1)).  But the State had no corresponding statutory

obligation to serve the Amended Judgment on Allard personally. As the record reveals, the trial court provided copies of the Amended Judgement to the Appellate Defender's Office on two separate occasions. (Doc. 38-3 at 13, Doc. Seq. 67; 69)

Any failure on the part of the Appellate Defender's office or of Allard's trial counsel to provide the Amended judgment to Allard, does not entitle Allard to delayed accrual, because §2244(d)(1)(B) requires a state-created impediment. The purported acts or omissions of counsel are not attributable to the State. See e.g., *Lawrence v. Florida*, 421 F. 3d 1221, 1226 (11th Cir. 2005), aff'd on other grounds, 549 U.S. 327 (2007)(rejecting argument that the state created an impediment by providing incompetent counsel; "[t]his is not the type of State impediment envisioned in §2244(d)(1)(B)"), *Ibarra v. Ground*, 2012 WL 3259898, at *3 (C.D. Cal. July 9, 2012), adopted, 2012 WL 3257882 (C.D. Cal. Aug. 8, 2012)("the actions of petitioner's appellate counsel cannot be imputed to the state for purposes of extending the limitations period under §2244(d)(1)(B)). Thus, in the present case, Allard cannot demonstrate the existence of an unlawful state action.

Moreover, as discussed below, Allard has not established that such an action "altogether prevented him from presenting his claims in any form, to any court" or that the alleged state action "made it impossible for him to file a timely §2254 petition in federal court." *Ramirez*, 571 F. 3d at 1001. Accordingly, Allard is not entitled to avail himself of the relief provided under 28 U.S.C. §2244(d)(1)(B).

### A. Equitable Tolling

A habeas petitioner is " 'entitled to equitable tolling' only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010)(quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). "The petitioner must show that 'the extraordinary circumstances were the cause of his untimeliness and that the extraordinary circumstances made it impossible to file a petition on time.'" *Porter v. Ollison*, 620 F. 3d 952, 959 (9th Cir. 2010); see also, *Brambels v. Duncan*, 330 F. 3d 1197, 1202 (9th Cir. 2003).

"The threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F. 3d 1063, 1066 99th Cir. 2002). The failure to file a timely petition must be the result of external forces, not the result of the petitioner's lack of diligence. *Miles v. Prunty*, 187 F. 3d 1104, 1107 (9th Cir. 1999). "Determining whether equitable tolling is warranted is a 'fact-specific inquiry.'" *Spitsyn v. Moore*, 345 F. 3d 796, 799 (9th Cir. 2003).

### i.    Delayed Notification of Amended Judgment

As set forth above, any claim regarding the alleged ineffectiveness of Allard's trial counsel or appellate counsel's purported failure to advise Allard of the trial court's amended judgment would warrant equitable tolling fails. See, *Holland v.*

*Florida*, 560 U.S. at 651-52 (a "garden variety" claim of attorney negligence does not merit equitable tolling); *Velasquez v. Kirkland*, 693 F. 3d 964, 969 (9th Cir.), cert denied, 565 U.S. 1016 (2011)(petitioner "must have been delayed by circumstances beyond his direct control, and not by his or his counsel's own mistake")(citations omitted).

In some instances, a state court's failure to notify a prisoner of a ruling can constitute an extraordinary circumstance that prevents a petitioner from timely filing his federal petition. See *Fue v. Biter*, 842 F. 3d 650, 653 (9th Cir. 2016) (state court's failure to notify prisoner that his state habeas petition had been denied was an extraordinary circumstance); *Ramirez*, 571 F. 3d at 997 (prisoner's lack of knowledge that state court had ruled in his case grounds for equitable tolling). But a petitioner still must act with diligence.

In *Huizar v. Carey*, 273 F. 3d 1220 (9th Cir. 2001), the petitioner claimed to have provided his petition to prison officials for mailing on April 15, 1996. On June 19, 1996, Huizar wrote to the Superior Court inquiring as to the status of his petition, but received no reply. *Huizar*, 273 F. 3d at 1222. Twenty-one months later, Huizar again wrote the Superior Court and again received no reply. *Id.* In August of 1998, Huizar sent another inquiry to which the Court informed him a petition had never been received. *Id.* There, the Circuit held that if Huizar's claims were true, he was entitled to tolling for the time period he believed his

11

petition to be pending because he had acted diligently in seeking information relative to his case status. *Id.* at 1224. The Circuit held twenty-one months was "not an unusually long time to wait for a court's decision." *Id.*

In *Fue v. Biter*, the Circuit looked to other circuits in making a case specific determination of whether a petitioner acted with diligence in checking on their state habeas matters:

> The Sixth Circuit, noting that "it is a difficult, if not impossible endeavor, [for litigants] to estimate how long a reviewing court will take to decide a particular motion," held that a pro se petitioner who waited nine months before contacting the court about his case acted with reasonable diligence. *Miller v. Collins*, 305 F.3d 491, 496 (6th Cir. 2002). The Fifth Circuit held that an eleven-month delay in contacting the court was reasonable "given [the petitioner's] prisoner and pro se status and the fact that the [court] had the legal duty to notify him" when it rendered a decision, which it failed to do. *Hardy v. Quarterman*, 577 F.3d 596, 599 (5th Cir. 2009) (per curiam). And the Eleventh Circuit sanctioned a wait of over sixteen months in contacting the court when a pro se petitioner had been told that he would be notified of any decision in his case, but he never received such notice. *Knight v. Schofield*, 292 F.3d 709, 710–11 (11th Cir. 2002) (per curiam) Fue, also a pro se petitioner entitled to receive notice of the state court's decision, acted diligently by contacting the court after a reasonable amount of time (here, fourteen months) had passed. Compare *Diaz v. Kelly*, 515 F.3d 149, 154–56 (2d Cir. 2008) (finding that a pro se petitioner's nine-month delay in contacting the court was reasonable where the law required the court to notify parties of its decisions, but the petitioner did not receive notice), with *LaCava v. Kyler*, 398 F.3d 271, 276–78 (3d Cir. 2005) (declining to grant equitable tolling after a twenty-one month delay in contacting the court where the petitioner was represented by counsel and not entitled to personal notice of the court's decision), and *Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2002) (same, twenty-four months).

*Fue*, 842 F. 3d at 645-55.

Allard's case is distinguishable from *Huizar* and *Fue*. Following the

concession/remand regarding the imposition of restitution, of which Allard was apparently aware,[10] he waited nearly three years before inquiring of counsel as to the status of his case.  Likewise, his out time appeal was filed more than three years after the entry of the Amended Judgment.  After the Montana Supreme Court's denied his petition for an out of time appeal, it appears Allard waited approximately one more year before making an inquiry to the trial court.  But, when Allard made the inquiry, it does not appear that he was seeking an update on the status of his case following the June 2011 remand, rather, he was requesting a complete copy of the case file.  (Doc. 31-16 at 1).

The record reveals that Allard made his first inquiry to the trial court in February of 2011 before his notice of direct appeal had even been filed.  Although Allard claims to have contacted the Office of the Appellate Defender and two separate State Defender Offices,[11] at no point during this four year period did he contact the trial court.  Moreover, in his state petition for an out of time appeal and in documents filed with this Court, Allard did not attribute his delay in his federal filing due to the fact he was waiting on a decision from the state trial court.  See, (Docs. 7 and 31-14).  In fact, Allard never mentioned the delay in obtaining the Amended Judgment as a basis for any of his out of time actions, including a

---

[10] See, (Doc. 19 at 120-121) (4/30/14 letter from Allard to Stephens).
[11] See, (Doc. 19 at 120).

petition for an out of time appeal in state court and as a response to this Court's order to show cause. Under the rationale of *Fue*, Allard's nearly four-year delay of inquiring to the trial court was not reasonable.

The state court record also reveals that Allard's representative, LaVonne Olmsted, obtained copies of the trial court judgments on December 8, 2014. See, (Doc. 38-3 at 13, Doc. Seq. 69). Assuming she shared those with Allard, as his "legal power of attorney" Allard still waited over sixteen months after Olmsted obtained these judgments before filing in this Court.

As an initial observation, unlike the petitioners in *Huizar* and *Fue*, Allard was not waiting for a decision on a state habeas petition. It is also not apparent that the failure of the trial court to provide Allard with its order striking the restitution provision was the cause of Allard's failure to timely file in this Court. Because Allard was aware that the only issue on appeal related to the imposition of restitution, this single issue would not have prevented him from seeking relief as to other substantive claims he believed may have existed.[12] Although not the exact claims he raises here, Allard attempted to raise similar claims before the Montana Supreme Court in 2014, well before the trial court sent him the Amended judgment

---

[12] Or, to put it another way, the alleged lack of notice of the Amended Judgment was not the cause of Allard's untimely filing in this Court, because Allard has not sought to challenge, and arguably could not challenge, the imposition of restitution in federal habeas. Allard's Ineffective Assistance of Counsel and Due Process claims are entirely distinct from the issue of restitution.

on November 17, 2015.

But, even if this Court were to accept that the delayed judgment in Allard's case presented an extraordinary circumstance, Allard did not act with the requisite diligence. "The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" *Holland*, 560 U.S. at 653. Reasonable diligence requires only "the effort that a reasonable person might be expected to deliver under his or her particular circumstances." *Doe v. Busby*, 661 F. 3d 1001, 1015 (9th Cir. 2011). "To determine if a petitioner has been diligent in pursuing his petition, courts consider the petitioner's overall level of care and caution in light of his or her particular circumstances." *Id*. at 1013.

The alleged delay in receiving the Amended Judgment was not the cause of Allard's failure to timely file his petition in this Court. But even if this argument is accepted, Allard failed to act diligently in seeking information relative to the Amended Judgment- a failure which precludes equitable tolling.

### ii.    Allard's Brain Injury

The Ninth Circuit has articulated a two-part test to determine whether a petitioner is entitled to equitable tolling based upon a mental impairment:

(1) First a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control by demonstrating the impairment was so severe that either

(a) Petitioner was unable to rationally or factually to personally understand the need to timely file, or

15

(b) Petitioner's mental state rendered him unable to personally prepare a habeas petition and effectuate its filing.

(2) Second, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

*Bills v. Clark*, 628 F. 3d 1092, 1099-100 (9th Cir. 2010); see also *Orthel v. Yates*, 795 F. 3d 935, 938 (9th Cir. 2015). The relevant inquiry is, "[d]id the mental impairment cause an untimely filing?" *Bills*, 628 F. 3d at 1100, n.3. Bill further explains that when applying its two-part test, the Court make the following considerations:

> [T]o evaluate whether a petitioner is entitled to equitable tolling, the district court must: (1) find the petitioner has made a non-frivolous showing that he had a severe mental impairment during the filing period that would entitle him to an evidentiary hearing; (2) determine, after considering the record, whether the petitioner satisfied his burden that he was in fact mentally impaired; (3) determine whether the petitioner's mental impairment made it impossible to timely file on his own; and (4) consider whether the circumstances demonstrate the petitioner was otherwise diligent in attempting to comply with the filing requirements.

*Bills*, 628 F. 3d at 100-01.

Allard suffered a subdural hematoma that required surgical intervention in 1983 when he was 15-years old. The record reveals that he suffered subsequent closed head injuries, the most recent being in January of 2008. In August of 2010, Allard underwent a psychosexual evaluation. The first area of concern Dr. Scolatti

addressed was Allard's "current psychological functioning." (Doc. 20 at 28). Dr.

Scolatti performed 4 hours of clinical interview with Allard psychologically

assessed him for another four hours and performed a battery of tests. (Doc. 20 at

29, 44).

Dr. Scolatti observed:

> Throughout the assessment, Mr. Allard was oriented to person, place
> and time. There was no indication of organic impairment, mental
> retardation, or psychoses. Mr. Allard's memory processes were intact
> for immediate, short-term, and remote events, although he claimed
> some memory problems due to his head injuries. Mr. Allard's
> thoughts were coherent, and he expressed his ideas in a consistent and
> logical manner. At times Mr. Allard was very verbose and tangential
> in his delivery of simple information. This may be the result of some
> residual organic impairment, or his personality style, which has
> several narcissistic elements. Mr. Allard's clinical presentation and
> personal history suggest the presence of a mood disorder, more
> specifically, Dysthymic Disorder. There were no historical or current
> indications of delusions or hallucinations. In addition, Mr. Allard did
> not express any homicidal or suicidal ideation, plans, gestures, or past
> behaviors. Overall, Mr. Allard did not appear to be inflicted with any
> physical or psychological syndrome or disorder that would impair or
> prevent his ability to understand the current legal proceedings, and to
> participate in the evaluation process.

(Doc. 20 at 44-45). Scolatti opined, "Overall, Mr. Allard does not appear [to] have

any significant psychological disorders or problems that would significantly

prevent or impair him from participating in his case. He appears to possess

adequate cognitive and emotional abilities to effectively communicate with his

attorney, understand the court proceedings and appreciate his legal rights and

options in his case. *Id.* at 45. Dr. Scolatti described Allard's Global Assessment of

functioning at a 42, which indicates serious symptoms and serious impairment or problems in social and/or occupational functioning.  He described Allard: "Severe personality disorder; significant chemical dependency issues; estranged from family; incarceration; conviction for a sexual offense; hebephiliac; social isolation." *Id*. at 57.

The record does not reveal, nor does Allard provide information, that would lead this Court to believe events occurred following Allard's sentencing that would entitle him to equitable tolling.  Rather, Allard argues that there is no evidence that his situation has improved "since he's been locked up at the Montana State Prison." (Doc. 35 at 12).  Allard does not present information that would indicate his brain injury is the cause of his failure to timely file in this Court.  Rather, Allard requests a hearing so that he may develop the issue further.  But, a petitioner alleging he is entitled to equitable tolling based upon a mental impairment is not entitled to a hearing unless he demonstrates "a good faith allegation that would, if true, entitle him to equitable tolling." *Laws v. Lamarque*, 351 F. 3d 919, 921 (9th Cir. 2003).

Thus, the Court has no information upon which to believe Allard was laboring under a severe mental impairment.  To the contrary, the record before this Court reveals Allard was able to correspond with his attorney, to correspond with the trial court, and to file a petition for an out of time appeal with the Montana

18

Supreme Court. Allard's situation is certainly distinguishable from *Forbess v. Franke*, 749 F. 3d 837 (9th Cir. 2014), where the petitioner demonstrated a severe mental illness that made it impossible for him to file his federal habeas petition in a timely manner. In *Forbess*, the court explained that the Petitioner there:

> [B]elieved he was working undercover for the FBI, and his trial was a "sham" orchestrated to lure his ex-wife out of hiding and arrest her for being part of an extensive drug distribution operation. Petitioner's claim that his delusions persisted from the time of his trial to the expiration of the limitations period is supported by the psychological evaluations of Dr. Fickle, Dr. McDonald, and Dr. Melnick, and by the mental health records. During the relevant time period, Petitioner genuinely believed the FBI would release him once they arrested his ex-wife. As such, he was incapable of rationally understanding the necessity of filing a timely habeas petition.

*Forbess*, 749 F. 3d at 840. The Scolatti evaluation and the lack of information before this Court relative to Allard's alleged compromised mental functioning in the years following his sentencing stands in stark contrast to the petitioner in Forbess.

In short, Allard has not met his burden and demonstrated that extraordinary circumstances rendered him unable to personally prepare his habeas petition and effectuate its filing. Accordingly, the petition should be dismissed as time-barred.

## B. Procedural Default

Respondents argue in the alternative that Allard procedurally defaulted his claims. Because the petition is untimely, the Court need not address this alternative argument.

### III.   Conclusion

Allard's claims are untimely and his failure to comply with the federal limitations period cannot be excused.  His petition should be dismissed as time-barred.

### IV.   Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a), Rules governing § 2254 Proceedings.  A COA should issue as to those claims on which a petitioner makes a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Where a claim is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Gonzalez v. Thaler*, __ U.S. __, 132 S. Ct. 641, 648 (2012) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

None of the claims advanced by Allard appear to make a substantial showing that he was deprived of a constitutional right.  A certificate of appealability should be denied because the petition is time-barred by over three

years and no reasonable jurist would find his claims timely; thus, there is no basis to encourage further proceedings.

Based on the foregoing, the Court makes the following:

## RECOMMENDATION

1. The Amended Petition (Doc. 18) should be DISMISSED WITH PREJUDICE as untimely.

2. The State's Motion to Dismiss (Doc. 29) should be GRANTED.

3. The Clerk of Court should be directed to enter, by separate document, a judgment in favor of Respondents and against Petitioner.

4. A certificate of Appealability should be DENIED.

### NOTICE OF RIGHT TO OBJECT
### TO FINDINGS & RECOMMENDATION
### AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Allard may object to this Findings and Recommendation within 14 days. 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

DATED this 12th day of December, 2017.

/s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge